UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PHILLIP G. BAZZO,

    Plaintiff,

v.

ATTORNEY GRIEVANCE COMMISSION, MICHAEL V. GOETZ, and SARAH C. LINDSEY,

    Defendants.
_____/

Case No. 4:23-cv-10403
District Judge Shalina D. Kumar
Magistrate Judge Kimberly G. Altman

## **REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION TO DISMISS (ECF No. 8)**[1]

### I. Introduction

This is a civil case. Plaintiff Phillip G. Bazzo (Bazzo), proceeding *pro se*, is suing the Attorney Grievance Commission (AGC), Michigan Grievance Administrator Michael V. Goetz (Goetz), and AGC attorney Sarah C. Lindsey (Lindsey) for their acts and omissions during the disciplinary process that led to his disbarment as an attorney from the State Bar of Michigan. The complaint, which runs over 100 pages and over 300 paragraphs, asserts multiple claims, which essentially consist of 4th and 14th Amendment violations under 42 U.S.C. § 1983.

---

[1] The Court informed the parties on June 26, 2023, that it would decide the motion without oral argument. (ECF No. 12).

1

*See* ECF No. 1. Under 28 U.S.C. § 636(b)(1), all pretrial matters have been referred to the undersigned. (ECF No. 5).

Before the Court is a motion to dismiss jointly filed by defendants. (ECF No. 8). The motion is fully briefed, (ECF Nos. 10, 13), and ready for consideration. For the reasons set forth below, it is RECOMMENDED that the motion be GRANTED, and the case be dismissed.

## II.   Background

The following facts are gleaned from the complaint.

Bazzo was a licensed attorney in Michigan from October 1975 through February 24, 2021, when he was disbarred. (ECF No. 1, PageID.8). He was never reprimanded or suspended during his decades of practice. (*Id.*).

The misconduct allegations leading to Bazzo's eventual disbarment involve keeping money belonging to a client for his personal use on two occasions and having a sexual relationship with the same client.

In October 2011, Bazzo and his client executed a written retainer before he began representing her regarding an incident in which sewage backed up into her first-floor apartment. (*Id.*, PageID.36-37). By mid-December 2012, Bazzo had arranged and finalized settlements with five out of six of the responsible parties and was awaiting disbursement of the settlement funds from those five parties. (*Id.*, PageID.37, 41). As of December 2012, Bazzo was still pursuing a claim

against one of the parties, O'Donnell, who he believed "was the most culpable party relating to [his client's] damages." (*Id.*, PageID.41).

After the five settlements were finalized, but before the funds were disbursed, Bazzo discussed with his client "whether they should have a sexual aspect to their relationship." (*Id.*). Bazzo researched and considered potential ethical issues before beginning a sexual relationship with his client. (*Id.*). As part of his consideration, he called the State Bar of Michigan Ethics Hotline on December 18, 2012. (*Id.*, PageID.38). Bazzo's first sexual experiences with his client occurred on December 20 and/or 21, 2012, and he ended their sexual relationship on January 27, 2013. (*Id.*).

By January 6, 2013, Bazzo had finished preparing a document for his client to sign regarding their sexual relationship and his ongoing representation of her in legal matters. (*Id.*, PageID.40). This document stated that he and his client had consensual sexual experiences on or about December 20, 2012, December 24, 2012, and January 6, 2013. (*Id.*, PageID.41-42). Bazzo reviewed the document with his client on January 6, 2013, placed his initials next to each paragraph, and signed the document. (*Id.*, PageID.42). Even though his client found the statements in the document to be truthful, she was uncomfortable initialing and signing the document at that time. (*Id.*). Bazzo then paused their sexual relationship until January 24, 2013, when his client emailed him an executed

3

document indicating she consented to Bazzo's continued representation of her while they engaged in a sexual relationship. (*Id.*). The two had their final sexual experience on January 26/27, 2013, after which Bazzo informed his client that "the sexual aspect of the relationship was over." (*Id.*, PageID.43).

Bazzo alleges that defendants falsely claimed he kept his client's funds when in fact he gave her all funds owed to her and defendants were aware of this. (*Id.*, PageID.14-24, 26-34, 51-89, 93-95). He further alleges that defendants failed to timely provide him with bank account records that showed he disbursed the disputed funds to his client. (*Id.*). According to Bazzo, defendants' acts and omissions "constituted prosecutorial misconduct and proximately caused [Bazzo] to suffer substantial economic and emotional harm" because he was unable to fully engage in the practice of law once defendants filed a misconduct complaint against him. (*Id.*, PageID.24, 34-35).

Bazzo further alleges that defendants falsely claimed he had a " 'sexual relationship' " with his client that " 'lasted only several months.' " (*Id.*, PageID.36 (capitalization modified and emphasis omitted)). Bazzo, however, asserts that the sexual relationship comprised of "four sexual experiences for over a period of 37 days." (*Id.* (capitalization modified and emphasis omitted)).

### III. Motion to Dismiss Standard

When deciding a motion to dismiss under Federal Rule of Civil Procedure

4

12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action").

Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

IV.  Discussion

Defendants argue that all of Bazzo's claims could be properly dismissed on any of the following grounds: (1) res judicata; (2) the *Rooker-Feldman* doctrine; and (3) immunity and failure to state a claim. Each of these grounds will be

5

discussed in turn below.

### A. Res Judicata

#### 1. Background

Bazzo filed a nearly identical lawsuit to this one in state court. As defendants explain in their motion,

> [o]n February 24, 2022, Bazzo filed a complaint in Wayne County Circuit Court. (Exhibit A, Wayne CC Complaint.) Bazzo filed an amended complaint on April 1, 2022. (Exhibit B, Amended Complaint.) The headings, allegations, and paragraph numbering of the Amended Complaint are essentially identical to the headings, allegations, and paragraph numbering of the complaint filed in this Court, except that the state court complaint did not include Counts V and VI [alleging untimely disclosure of IOLTA records and false statements to obtain probable cause].
>
> On May 10, 2022, [d]efendants transferred the case to the Michigan Court of Claims. (Exhibit C, Notice of Transfer.) Once the case was before the Court of Claims, [d]efendants filed a motion for summary disposition. (Exhibit D, Motion to Dismiss; Exhibit E, Brief in Support.) Bazzo filed a response in opposition to the motion on August 5, 2022. (Exhibit F, Bazzo Response.) Defendants filed their reply on August 18, 2022. (Exhibit G, Defendants' Reply.)
>
> On September 27, 2022, Michigan Court of Claims Judge Douglas Shapiro entered a written opinion and order granting [defendants'] motion and dismissing Bazzo's complaint. (Exhibit H, Opinion and Order.) Judge Shapiro held that Bazzo's claim was barred by Michigan Court Rules because of the absolute immunity they afford to the attorney grievance administrator, legal counsel, and investigators for conduct arising out of the performance of their duties. (Ex. H, p 4-7.) But Judge Shapiro further held that Bazzo's §1983 claims were barred because the Attorney Grievance Commission—a state agency—and [d]efendants Goetz and Lindsey in their official capacities were not "persons" subject to liability under that statute. (Ex. H, p 7-8.) Judge Shapiro also concluded that Goetz and Lindsey were entitled to

6

absolute prosecutorial immunity. (Ex. H, p 8.) Lastly, Judge Shapiro held that Bazzo's claims were an impermissible collateral attack on the Attorney Discipline Board's order and the Michigan Supreme Court's denial of leave to appeal. (Ex. H, p 8-9.)

On October 18, 2022, Bazzo filed a motion for reconsideration along with a motion for leave to file a second amended complaint. (Exhibit I, Motion for Reconsideration; Exhibit J, Motion for Leave.) Importantly, Bazzo's motion for leave included a proposed second amended complaint. (Exhibit K, Proposed Second Amended Complaint.) The proposed seconded amended complaint included new counts—Counts V and VI. (Ex. K, ¶192-328.) The headings, allegations, and paragraph numbers in Counts V and VI of the proposed Second Amended Complaint are essentially identical to Counts V and VI in Bazzo's complaint before this Court. (Compare ECF 1, PageID.90-128, ¶192-323.) On October 24, 2022, the Court of Claims entered an order denying Bazzo's motion for reconsideration. (Exhibit L, Order Denying Reconsideration & Leave.) In that order, the Court denied leave to file a second amended complaint, holding that the proposed amendment would be futile because it failed to state an actionable claim and constituted a collateral attack on an [Attorney Discipline Board] order. (Ex. L, p 1-2.) On November 11, 2022, Bazzo filed a claim of appeal. (Exhibit M, Claim of Appeal.) That appeal remains pending at the time of this motion.

(ECF No. 8, PageID.157-160 (internal footnote omitted)).

2. Analysis

"The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.' " *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). "[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).

> The Michigan Supreme Court "has taken a broad approach to the doctrine of res judicata," determining that it "bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." The doctrine "bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not."

*Bates v. Twp. of Van Buren*, 459 F.3d 731, 734 (6th Cir. 2006) (quoting *Adair v. State Dep't of Educ.*, 470 Mich. 105, 121 (2004)).

In his response to defendants' motion, Bazzo raises only one argument in opposition to the application of res judicata to his claims. He argues that because his appeal to the Michigan Court of Appeals remains pending, there has been no final judgment in the state court case and this Court cannot apply res judicata in the absence of a final judgment. This argument misses the mark.

"[T]rial court judgments are considered final for preclusion purposes even if a party intends to appeal or if an appeal is pending." *Mahindra & Mahindra Ltd. v. FCA US LLC*, 503 F. Supp. 3d 542, 551 (E.D. Mich. 2020); *see also Crawford v. Chabot*, 202 F.R.D. 223, 227 (W.D. Mich. 1998) (finding that a state court judgment is final for res judicata purposes, despite the pendency of an appeal from that judgment). Here, the Michigan Court of Claims has issued a final judgment for the purposes of res judicata. Therefore, Bazzo's claims are barred by res judicata and can be dismissed on this ground.

8

B. *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine is based on the principle that a federal district court does not have appellate jurisdiction to review a state court judgment because that power is reserved to the Supreme Court under 28 U.S.C. § 1257. *See Exxon Mobil Corp. v. Saudi Basic Indus.*, 544 U.S. 280, 292 (2005). In *Exxon Mobil*, the Supreme Court held that "[t]he *Rooker-Feldman* doctrine . . . is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284. "The pertinent question in determining whether a federal district court is precluded under the *Rooker-Feldman* doctrine from exercising subject-matter jurisdiction over a claim is whether the source of the injury upon which plaintiff bases his federal claim is the state court judgment." *In re Cook*, 551 F.3d 542, 548 (6th Cir. 2009) (internal quotation marks and citations omitted).

As a preliminary matter, Bazzo concedes that under the *Rooker-Feldman* doctrine his "claims relating to injury caused by the state judgments are not actionable." (ECF No. 10, PageID.611). Bazzo believes, however, that his claims against Goetz and Lindsey for their "illegal acts of withholding exculpatory IOLTA evidence of payments and making false statements of non-payments

9

including manufacturing evidence that a non-existent $2,700 Farmington Hills check are actionable." (*Id.*, PageID.610-611). In other words, Bazzo argues that his fraud-based claims are not barred.

In support of their argument, defendants cite *In re Cook*, 551 F.3d 542 (6th Cir. 2009). In *Cook*, the Sixth Circuit dealt with the application of the *Rooker-Feldman* doctrine under similar facts when it considered a disbarred attorney's "claims: (1) that the Ohio courts denied her due process during her state disbarment proceedings; and (2) that these due process violations in her state disbarment proceedings tainted the district court's proceedings." *Id.* at 544. The disbarred attorney devoted "a substantial portion of her argument to challenging the sufficiency of the due process protections she was afforded in her state disbarment proceedings, seemingly challenging the validity of the Supreme Court of Ohio's disbarment order." *Id.* at 547. The Sixth Circuit found that it was "precluded by the *Rooker-Feldman* doctrine from reviewing any claims that challenge the sufficiency of the proceedings afforded Cook by the State of Ohio[.]" *Id.* at 547-48. It further explained that

> [i]n light of the nature of many of [the disbarred attorney's] claims, the *Rooker-Feldman* doctrine applies here and precludes review of any claims arising directly out of [her] state disbarment proceedings or the Ohio Supreme Court's disbarment order. *See Saier v. State Bar of Michigan*, 293 F.2d 756, 759 (6th Cir. 1961) (federal courts do not sit in review of state bar disciplinary proceedings). The proper forum in which to raise such claims was on direct appeal to the Supreme Court of the United States. *See* 28 U.S.C. § 1257. [The disbarred attorney]

cannot seek collateral review of her state disbarment proceedings in federal court.

*Id.* at 548.

Thus, under *In re Cook*, Bazzo's claims cannot be considered by this Court because they arise directly out of his state disbarment proceedings. To the extent Bazzo argues that claims under § 1983 are not barred, he cites no authority for this position. Regardless of how his multiple claims are framed, Bazzo is clearly challenging his disbarment proceedings. The Sixth Circuit has clearly held that under *Rooker-Feldman*, a federal court is precluded from hearing "any claims" challenging a disbarment proceeding.

In response, Bazzo relies on the unpublished out-of-circuit case of *Breck v. Doyle*, 796 F. App'x 333 (9th Cir. 2019). In *Breck*, the Ninth Circuit considered a

> § 1983 [case] against two sets of defendants. The first set—the Institutional Defendants—consists of the State of Nevada, the Nevada Supreme Court, and the State Bar of Nevada ("SBN"). The second set—the Individual Defendants—consists of nine individuals who participated in [the plaintiff's] disciplinary proceedings before the SBN.

*Id.* at 335. Both sets of defendants argued that the plaintiff lacked Article III standing. *Id.* at 336. Both sets also argued that they were immune from suit for actions taking during disciplinary proceedings. *Id.* at 336-37. The applicability of the *Rooker-Feldman* doctrine was not raised. Ultimately, the Ninth Circuit determined that Breck had standing to pursue his claims raising "allegations of

11

compensable injuries that d[id] not result from the SBN's disciplinary order[,]" and also that "if the Individual Defendants are immune in their personal capacities at all, that immunity must find its source outside of the Eleventh Amendment or state law." *Id.* at 336-37. *Breck*—which did not mention the *Rooker-Feldman* doctrine—cannot save Bazzo's claims from dismissal under proper application of that doctrine and the binding authority of *In re Cook*.

C. Immunity

1. Eleventh Amendment Immunity & Failure to State a Claim

Defendants argue that they are entitled to absolute immunity as to Bazzo's claims against them in their official capacities. The undersigned agrees. The AGC is a state governmental entity and Goetz and Lindsey are employees of the AGC, against which monetary suits are barred by the Eleventh Amendment. *See, e.g.*, *Cady v. Arenac Cnty.*, 574 F.3d 334, 344 (6th Cir. 2009) ("[A]n official-capacity suit against a state official is deemed to be a suit against the state and is thus barred by the Eleventh Amendment, absent a waiver." (cleaned up)).

In response, Bazzo admits that defendants are entitled to immunity in their official capacities in his response to the motion to dismiss. (ECF No. 10, PageID.613). As such, there is no dispute between the parties that Bazzo's claims against defendants in their official capacities are barred by the Eleventh Amendment and should be dismissed. Further, because Bazzo concedes that

defendants are entitled to Eleventh Amendment immunity for any claims asserted against them in their official capacities, it is not necessary to address defendants' additional argument that when sued in their official capacities they are not persons subject to suit under § 1983. Thus, Bazzo's claim against the AGC and his claims against Goetz and Lindsey in their official capacities may be dismissed under the Eleventh Amendment.

    2.  Absolute Prosecutorial Immunity & Qualified Immunity

Lindsey and Goetz also argue they are entitled to absolute prosecutorial immunity and qualified immunity from Bazzo's claims.

      a.  Absolute Prosecutorial Immunity

As to prosecutorial immunity, "[t]he Attorney Grievance Commission is the prosecution arm of the Supreme Court for discharge of its constitutional responsibility to supervise and discipline Michigan attorneys." *Eston v. Van Bolt*, 728 F. Supp. 1336, 1338 (E.D. Mich. 1990). As AGC employees, Lindsey and Goetz "were acting in their official capacity by either supervising or disciplining Michigan Attorneys pursuant to statute," *id.*, when pursuing disciplinary proceedings against Bazzo.

"Courts have extended immunity to persons who perform official functions in the prosecution of disciplinary matters." *Id.* at 1338-39 (citing cases). Because Bazzo's "complaint directly relates to [Lindsey and Goetz's] performance of their

13

statutory duties as members of the . . . Attorney Grievance Commission" they "are immune from liability for acts or omissions performed in this official capacity." *Id.* at 1338.

Further, Lindsey and Goetz are entitled to absolute immunity under the Supreme Court's functional approach. *See Kalina v. Fletcher*, 522 U.S. 118 (1997). "In the Sixth Circuit, the focus of the inquiry is how closely related the prosecutor's conduct is to his role as an advocate intimately associated with the judicial phase of the criminal process." *Harris v. Kitchka*, No. No. 1:19-cv-954, 2019 WL 7343353, at *3 (W.D. Mich. Dec. 31, 2019) (citing *Spurlock v. Thompson*, 330 F.3d 791, 797 (6th Cir. 2003)). Additionally, "courts will bar § 1983 suits arising out of even unquestionably illegal or improper conduct by the prosecutor so long as the general nature of the action in question is part of the normal duties of a prosecutor." *Cady v. Arenac Cnty.*, 574 F.3d 334, 340 (6th Cir. 2009); *see also Imbler v. Pachtman*, 424 U.S. 409, 413, 430 (1976) (holding that a prosecutor accused of knowingly presenting false testimony at trial is protected by absolute immunity); *Jones v. Shankland*, 800 F.2d 77, 80 (6th Cir. 1986) ("The use of perjured testimony and the non-disclosure of exculpatory information are certainly entitled to absolute immunity."); *Heidelberg v. Hammer*, 577 F.2d 429, 432 (7th Cir. 1978) (holding that a prosecutor is absolutely immune from a suit claiming that he destroyed and falsified evidence).

14

Here, even if Bazzo's allegations were fully credited, Lindsey and Goetz would nonetheless be entitled to absolute immunity. For instance, Bazzo alleges that they failed to disclose exculpatory evidence in the form of bank statements; however, "prosecutors maintain their immunity when intentionally failing to disclose exculpatory evidence." *Price v. Montgomery Cnty.*, 72 F. 4th 711, 720 (6th Cir. 2023). Similarly, merely violating the Michigan Rules of Professional Conduct is the kind of "improper conduct" shielded by absolute immunity. *See Cady*, 574 F.3d at 340.

In response, Bazzo again cites *Breck*, arguing that the Ninth Circuit held that "only qualified immunity applied to the conduct of parties engaged in a disciplinary proceeding." (ECF 10, PageID.628). *Breck* did not so hold. Rather, after the Ninth Circuit addressed Eleventh Amendment issues, it found that immunity provided *by state law* did not provide immunity from suit under § 1983. *Breck*, 797 F. App'x at 336-37. The Ninth Circuit then went to note that the defendants may still have immunity under federal law—including, "federally-recognized common law immunities, such as judicial or qualified immunity." *Id*. at 337. Here, defendants argue that they have absolute prosecutorial immunity under federal common law.

Overall, Bazzo's allegations against Lindsey and Goetz all involve their acts and omissions as AGC employees involved in the prosecution of attorney

misconduct, meaning Lindsey and Goetz are entitled to absolute immunity for Bazzo's claims against them in their individual capacities.

### b. Qualified Immunity

As to whether Goetz and Linsey are alternatively entitled to qualified immunity, qualified immunity shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Prosecutors can receive qualified immunity for "[c]onduct that falls outside the cloak of absolute immunity." *Price*, 72 F. 4th at 720. Here, since Lindsey and Goetz are entitled to absolute immunity, qualified immunity does not apply. Nonetheless, for the sake of completeness, qualified immunity will be discussed below.

#### i. Legal Standard

Qualified immunity was created to protect government officials from interference with their official duties, and it "is an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). It gives officials "breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (punctuation modified). After a defending official

initially raises qualified immunity, the plaintiff bears the burden of showing that the official is not entitled to qualified immunity. *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013).

The Sixth Circuit has generally "use[d] a two-step analysis: (1) viewing the facts in the light most favorable to the plaintiff, [it] determine[s] whether the allegations give rise to a constitutional violation; and (2) [it] assess[es] whether the right was clearly established at the time of the incident." *Id.* The steps may be considered in either order, so "[i]f the court concludes that no constitutional violation has occurred, there is no need to address whether the alleged right was clearly established." *Kinlin v. Kline*, 749 F.3d 573, 577 (6th Cir. 2014).

ii. Application

Here, Bazzo has not shown that either Goetz or Lindsey violated a clearly established constitutional right. He has not cited any cases where a court has held that an attorney for a state bar violated a clearly established right for making false statements or failing to timely disclose exculpatory evidence in an attorney disciplinary proceeding. As such, Bazzo has failed to carry his burden to show that Lindsey and Goetz are not entitled to qualified immunity. *Burgess*, 735 F.3d at 472. Therefore, as they argue in their motion, because "Goetz and Lindsey could not have understood that they were doing anything that would violate a 'clearly established' constitutional right, they are entitled to qualified immunity." (ECF

17

No. 8, PageID.180).

## V. Conclusion

For the reasons stated above, it is RECOMMENDED that the motion to dismiss, (ECF No. 8), be GRANTED, and the case be dismissed in its entirety.

| | |
|---|---|
| Dated: January 2, 2024<br>Detroit, Michigan | s/Kimberly G. Altman<br>KIMBERLY G. ALTMAN<br>United States Magistrate Judge |

### NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation. Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Isaac v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 2, 2024.

                                              s/Carolyn M. Ciesla
                                              CAROLYN M. CIESLA
                                              Case Manager